UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Allan Block Corporation,

      Plaintiff,

v.                                                            Civil No. 04-3511 (JNE/JJG)
                                                             ORDER
E. Dillon & Company,

      Defendant.

      Allan Block Corporation sued E. Dillon & Company (Dillon) for breach of contract and

patent infringement.  After a jury trial, the Court entered judgment in favor of Allan Block in the

amount of $303,289.  The case is before the Court on post-trial motions.

## I.      BACKGROUND

      Allan Block is a Minnesota corporation involved in the development and licensing of a

cement block and related technology used in the construction of segmental retaining walls.

Allan Block owns United States Patent Nos. 4,909,010 ('010 patent) and 5,484,236 ('236

patent), titled "Concrete Block for Retaining Walls" and "Method of Forming Concrete

Retaining Wall Block," respectively.  In 1991, Allan Block and Dillon entered into a Production

Agreement (Agreement) that allowed Dillon to manufacture and sell Allan Block blocks in

return for royalty payments.  During the course of the Agreement, Dillon developed a new block

called the StoneLoc block.

      On August 2, 2004, Allan Block filed this action for breach of contract and patent

infringement against Dillon seeking monetary and injunctive relief.  On July 1, 2005, the Court

granted in part Allan Block's motion for a preliminary injunction, preliminarily enjoining Dillon

from manufacturing and selling the StoneLoc block.  The Court did not reach Allan Block's

patent infringement claims.

A jury trial began on May 8, 2007. During the trial, the Court granted Dillon's motion for judgment as a matter of law, holding that Dillon's manufacture or sale of the StoneLoc block did not literally infringe the '236 patent. On May 18, 2007, the jury returned a verdict. With respect to Allan Block's remaining patent infringement claims, the jury found that Dillon's manufacture or sale of the StoneLoc block did not literally infringe the '010 patent, but that it did infringe the '010 patent under the doctrine of equivalents; that Dillon's manufacture or sale of the StoneLoc block infringed the '236 patent under the doctrine of equivalents; and that Dillon's manufacture or sale of Allan Block blocks after July 27, 2004, infringed the '010 and '236 patents literally and under the doctrine of equivalents. In addition, the jury found that Dillon's infringement was willful and awarded damages in the amount of $303,289. With respect to Allan Block's contract claims, the jury found that Dillon breached the Agreement by using Allan Block's Technology to develop the StoneLoc block, failing to return Molds to Allan Block, and developing a Producer's Improvement. The jury awarded contract damages to Allan Block in the amount of $303,289. On May 23, 2007, the Court entered judgment against Dillon and in favor of Allan Block in the amount of $303,289. The matter is before the Court on the parties' post-trial motions under Rules 50 and 59 of the Federal Rules of Civil Procedure.

## II.    DISCUSSION

### A.    Legal standard

Rule 50(a)(1) provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:  (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

A party may renew a Rule 50 motion after trial.  Fed. R. Civ. P. 50(b).  In ruling on a renewed motion when a verdict has been returned, the court may allow the judgment to stand, order a new trial, or direct entry of judgment as a matter of law.  Fed. R. Civ. P. 50(b)(1)(A)-(C).  When considering a post-trial motion for judgment as a matter of law, the court determines "whether the record contains sufficient evidence to support the jury's verdict."  *Bass v. Gen. Motors Corp.*, 150 F.3d 842, 845 (8th Cir. 1998); *Dana Corp. v. IPC Ltd.*, 860 F.2d 415, 417 (Fed. Cir. 1989).  The court views the evidence in the light most favorable to the non-moving party and grants the non-moving party the benefit of all reasonable inferences.  *Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc.*, 439 F.3d 894, 899-900 (8th Cir. 2006); *Dana Corp.*, 860 F.2d at 417.  A judgment as a matter of law is appropriate when "there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1); *see also Canny*, 439 F.3d at 899-900.

Under Rule 59(a), "[a] new trial may be granted to all or any of the parties and on all or part of the issues . . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  A new trial is justified if the verdict is "against the great weight of the evidence."  *See Butler v. French*, 83 F.3d 942, 944 (8th Cir. 1996).  A new trial should be granted only where it is necessary to prevent a miscarriage of justice.  *Bass*, 150 F.3d at 845; *McKnight v. Johnson Controls, Inc.*, 36 F.3d 1396, 1400 (8th Cir. 1994).  In determining whether a verdict is against the weight of the evidence, the court may weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.  *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992).  "The court should reject a jury's verdict only where, after a review of all the evidence giving full respect to the jury's

verdict, the court is left with a definite and firm conviction that the jury has erred." *Ryan v.*

*McDonough Power Equip., Inc.*, 734 F.2d 385, 387 (8th Cir. 1984).

**B.     Post-trial motions on patent infringement claims**[1]

Claim 1 of the '010 patent reads:

> A concrete block for use in construction of retaining walls and the like, said block including:
>   a.  bottom, top, rear, side and frontal surfaces,
>   b.  said bottom, rear and side surfaces being generally planar and arranged generally normal to one another;
>   c.  said top including a first support area defined over a predetermined area of said top for the support of additional blocks, a vertically extending shoulder adjacent said frontal surface of said block and extending entirely therealong to provide a continuous block positioning member in close association to said frontal surface and a second top surface at the uppermost end of said extending shoulder;
>   d.  said frontal surface defining a lower vertical portion normal to said bottom and an upper, rearwardly inclined portion extending from said vertical portion terminating at said second top surface;
>   e.  said support area and said vertical shoulder providing a locating surface to receive an additional vertically positioned block thereon wherein the additional block is positioned rearwardly from the front surface of the receiving and supporting block whereby a wall of tiers of such blocks extend rearwardly and upwardly from a support surface.

Claim 1 of the '236 patent reads:

> A method of creating a construction block adapted to form retaining walls or the like, comprising the steps of:
>   a.  forming a member having a major upper surface and major lower surface and a plurality of edges, said upper major surface having a ridge extending laterally across a midsection thereof between an opposed pair of said edges with said ridges extending upwardly and away from said upper major surface by a predetermined first dimension, said lower major surface having a notch extending

---

[1]     With the exception of Dillon's motion on the issue of willfulness, the parties' motions regarding Allan Block's patent infringement claims relate to Dillon's manufacture or sale of the StoneLoc block.  Neither party takes issue with the jury's verdict insofar as it relates to Dillon's manufacture or sale of Allan Block blocks after July 27, 2004.  Thus, that portion of the jury's verdict stands.

laterally across a midsection thereof between said opposed pair of edges with said notch extending upwardly from said lower major surface by a dimension substantially equal to said predetermined first dimension, wherein said laterally extending ridge is parallel to and disposed vertically above said laterally extending notch; and

b. splitting said member along a center of both said ridge and said notch to define a pair of said construction blocks, wherein each said construction block has rough textured front surface defined by splitting the member in half, a recess extending laterally thereunder, and a lip extending laterally thereover wherein the height of said lip is substantially equal to the depth of said recess.

1.     *Infringement claims—'010 patent*

The jury determined that Dillon's manufacture or sale of the StoneLoc block did not literally infringe the '010 patent but did infringe under the doctrine of equivalents.  Allan Block now moves for a new trial and judgment as a matter of law on literal infringement of the '010 patent.  Dillon moves for judgment as a matter of law on noninfringement of the '010 patent under the doctrine of equivalents.  In the alternative, Dillon moves for a new trial.

The Court first turns to literal infringement of the '010 patent.  Allan Block contends that the claim construction provided to the jury on the '010 patent was erroneous and that Allan Block is therefore entitled to a new trial on literal infringement.  *See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371, 1383 (Fed. Cir. 2004).  Allan Block further argues that a proper claim construction entitles it to judgment as a matter of law.

Patent claim construction is a matter of law for the court.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).  Proper claim construction requires an examination of the intrinsic evidence of the record, including the claims, the specification, and, if in evidence, the prosecution history.  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  The starting point for claim construction is a review of the words of the claims themselves.  *Phillips v. AWH Corp.*, 415 F.3d

1303, 1312 (Fed. Cir. 2005) (en banc), *cert. denied*, 126 S. Ct. 1332 (2006); *Vitronics*, 90 F.3d at 1582.  The words of a claim are generally given their ordinary and customary meaning—the meaning that the term would have to a person of ordinary skill in the art at the time of the invention.  *Phillips*, 415 F.3d at 1312-13.  The claims must be read in view of the specification, which is always highly relevant to claim construction.  *Id.* at 1315.  The court may not, however, import limitations found only in the specification.  *Id.* at 1323; *Electro Med. Sys. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).  The court should also consider the patent's prosecution history, and in its discretion, may also consider extrinsic evidence.  *Phillips*, 415 F.3d at 1317-18.

The Court instructed the jury that "[in] the '010 patent, the 'vertically extending shoulder' must extend higher than the first support area."  Using the above standard, the Court concludes that there was no error in its construction of "vertically extending shoulder."  Claim 1(c) recites a "first support area," a "vertically extending shoulder," and a "second top surface at the uppermost end of said extending shoulder."  The claim language plainly differentiates between the "first support area" and the "second top surface," such that the "second top surface" is not a support surface.  Further, the claim language provides that the "vertically extending shoulder" extends entirely along the frontal surface "to provide a continuous block positioning member" and that "said support area and said vertical shoulder [provide] a locating surface to receive an additional vertically positioned block thereon."  Thus, the "vertically extending shoulder" along with the "support area" serve as a locating mechanism where a second block is placed on top of the first block.  The specification reinforces this notion:

> The uppermost surface of all forms of the block **10**, **11**, and **12** is divided into two distinct areas designated respectively **20a**-**20b** with a vertical dividing shoulder **20c** arranged therebetween.  The area defined by a flat top surface **20a** with

> vertical shoulder **20c** provides an interlock area for the next vertically oriented
> block received thereon.

*See* '010 patent, col. 3, ll. 56-62.  To serve as a locating mechanism, the "vertically extending shoulder" must rise above the first support area.  Thus, the Court discerns no error in its claim construction.  Allan Block's motion for a new trial is denied.[2]

The Court turns next to the issue of infringement under the doctrine of equivalents.  The jury found that Dillon's manufacture or sale of the StoneLoc block infringed the '010 patent under the doctrine of equivalents.  Dillon now moves for judgment as a matter of law or, in the alternative, a new trial on this issue.  In support, Dillon argues that Allan Block failed to prove that the StoneLoc block contains an equivalent to the "vertically extending shoulder" and the "generally planar bottom surface" elements of claim 1.  One way Dillon can succeed on its present motion is to demonstrate that there is no substantial evidence from which a jury could find that a single element of claim 1 was met literally *and* there is no substantial evidence of equivalents of this element.  *See Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1188-89 (Fed. Cir. 1998).  Generally, a claim is literally infringed if each claim element reads on, or is found in, the accused product or process.  *Allen Eng'g Corp. v. Bartell Indus. Inc.*, 299 F.3d 1336, 1345 (Fed. Cir. 2002).  If one element is missing, there can be no literal infringement.  *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998).  Even if there is no literal infringement, the claim may still be infringed under the doctrine of equivalents.  *Allen Eng'g*, 299 F.3d at 1345.  The test for equivalency is whether the difference between a claimed element and an accused product or process is insubstantial to one of ordinary skill in the art.  *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002).  An

---

[2]   Because the Court concludes that its claim construction was proper, Allan Block's motion for judgment as a matter of law is denied.

element in an accused product or process is equivalent to a claimed element if it performs substantially the same function in substantially the same way to achieve substantially the same result as the claimed element. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950). For a process claim, each step must be performed either as claimed or by an equivalent process. *Canton BioMed., Inc. v. Integrated Liner Techs., Inc.*, 216 F.3d 1367, 1369-70 (Fed. Cir. 2000).

Allan Block's expert testified that the StoneLoc block's "vertically extending shoulder" is created by the rear surface of the front face of the block and two side channels on each side of the top of the block. However, the top surface of the StoneLoc block lies on a single plane so that the uppermost portion of the support area is at the same level as the top of the front portion of the block that is adjacent to the two top-side channels. Therefore, the StoneLoc block lacks a "vertically extending shoulder" that extends higher than the first support area. Based on the evidence, the Court concludes as a matter of law that a "vertically extending shoulder" is not literally present in the StoneLoc product.

Turning to the doctrine of equivalents, Allan Block argues that it provided sufficient evidence that the StoneLoc block's "channels (recesses) worked in conjunction with the rear surface of the front face to create a vertically extending shoulder that, regardless of whether it [rises] above the entirety of the first support area," provides the same function, in the same way, to obtain the same result, as the '010 patent's "vertically extending shoulder." The Court disagrees. The function of the "vertically extending shoulder" element of the '010 patent is to serve as a positioning mechanism. The "vertically extending shoulder" of the '010 patent engages the front face of a second block that is stacked on top of the first block. In contrast, the area of the StoneLoc block that Allan Block argues is equivalent to the "vertically extending

shoulder"—the rear surface of the front face in conjunction with the channels—only serves as a positioning mechanism for a second block because of wedges on the bottom of the second block. Because the top of the StoneLoc block is on a single plane, a block without wedges placed on top of the StoneLoc block would not lock into place.  Further, Allan Block's expert testified that the StoneLoc block's channels would only serve as a positioning mechanism when the blocks are stacked directly on top of one another, but not when the StoneLoc blocks are placed in an offset manner.[3]  When StoneLoc blocks are placed in an offset manner, the wedges do not descend within the channels.  This testimony underscores the conclusion that the rear surface of the front face in conjunction with the channels of the StoneLoc block function differently than the '010 patent's "vertically extending shoulder."  The Court concludes that there was insufficient evidence for the jury to conclude that Dillon's manufacture or sale of the StoneLoc block infringed the '010 patent under the doctrine of equivalents.  Accordingly, the Court grants Dillon's motion for judgment as a matter of law on noninfringement of the '010 patent under the doctrine of equivalents.[4]  The Court also conditionally grants Dillon's motion for a new trial on the same issue because the jury's finding on this claim is against the great weight of evidence. *See* Fed. R. Civ. P. 50(c).

   2.   *Infringement claims—'236 patent*

The Court granted Dillon's motion for judgment as a matter of law, holding that Dillon's manufacture or sale of the StoneLoc block did not literally infringe the '236 patent.  The jury later returned a verdict finding that the manufacture or sale of the StoneLoc block infringed the

---

[3]    Evidence at trial shows that the StoneLoc block is customarily laid in an offset manner.

[4]    Because the Court concludes that the "vertically extending shoulder" is not present in the StoneLoc block literally or through the doctrine of equivalents, it need not decide if the "generally planar" element is present.

'236 patent under the doctrine of equivalents.  Allan Block moves for a new trial on literal

infringement of the '236 patent.  Dillon moves for judgment as a matter of law or, in the

alternative, a new trial on the issue of infringement under the doctrine of equivalents.

The '236 patent recites a method for creating a block.  Claim 1(a) recites the step of

"forming a member having a major upper surface and major lower surface."  The "upper major

surface" has "a ridge extending laterally across a midsection thereof."  The "lower major

surface" has "a notch extending laterally across a midsection thereof."  Claim 1(b) recites the

step of "splitting said member along a center of both said ridge and said notch to define a pair of

said construction blocks, wherein each said construction block has . . . a recess extending

laterally thereunder, and a lip extending laterally thereover wherein the height of said lip is

substantially equal to the depth of said recess."  With respect to the '236 patent, the Court

instructed the jury that "the phrases 'major upper surface' and 'major lower surface' refer to the

orientation of the member."

Turning first to the question of literal infringement, Allan Block argues that the Court's

construction regarding the "orientation of the member" did not foreclose a jury finding of literal

infringement on the '236 patent.  The Court disagrees.  First, there was insufficient evidence to

allow a jury to conclude that the StoneLoc member, prior to being split into two construction

blocks, contains a ridge on the major upper surface.  Instead, the evidence demonstrated that the

upper surface of the StoneLoc member, prior to being split into two blocks, contains four wedges

that stand out individually.  Second, the StoneLoc member lacks a notch extending upwardly

from the lower major surface.  Instead, its lower surface contains four individual channels.  Thus,

there was insufficient evidence for a jury to find that Dillon's manufacture or sale of the

StoneLoc block literally infringed the '236 patent.  The Court's grant of judgment as a matter of

law on this issue was appropriate and Allan Block's motion for a new trial on literal infringement of the '236 patent is denied.

In support of its motion for judgment as a matter of law on noninfringement of the '236 patent under the doctrine of equivalents, Dillon argues that the process for creating the StoneLoc block does not contain an equivalent to the "ridge" and "notch" elements of claim 1. At trial, Allan Block's expert testified that under the doctrine of equivalents, the "lug [wedge] and the recess [channel] [of the StoneLoc block] perform the same as the ridge and the notch [of the '236 patent.]"

The doctrine of equivalents requires an element-by-element inquiry. *Allen Eng'g*, 299 F.3d at 1345 ("this focus on individual limitations, rather than on the accused device as a whole, aids the court in being specially vigilant against allowing the concept of equivalence to eliminate any claim limitations completely"). As discussed above, the StoneLoc member lacks a ridge on its upper surface and a notch on its lower surface. Instead, four wedges are formed on the StoneLoc member's upper surface and channels are formed on the StoneLoc member's lower surface. There was insufficient evidence that the StoneLoc member has an equivalent of either the "ridge" or "notch" elements. In particular, there was no evidence that the StoneLoc's wedges perform the same function as the '236 patent's ridge or that the StoneLoc's channels perform the same function as the '236 patent's notch. In addition, unlike the ridge and notch elements of the '236 patent, evidence at trial indicates that the height of the StoneLoc's wedges is not related to the depth of the channels. The Court therefore concludes that there was insufficient evidence that would allow the jury to find that Dillon's manufacture or sale of the StoneLoc block infringes the '236 patent under the doctrine of equivalents. The Court grants Dillon's motion for judgment as a matter of law on noninfringement of the '236 patent under the doctrine of

equivalents with respect to the StoneLoc block.  The Court also conditionally grants Dillon's

motion for a new trial on the same issue because the jury's finding that the manufacture or sale

of the StoneLoc block infringed the '236 patent under the doctrine of equivalents is against the

great weight of evidence.

       *3.*     *Willful infringement*

The jury found that Dillon's infringement of Allan Block's patents was willful.  Dillon

now moves for judgment as a matter of law or, in the alternative, a new trial on the issue of

willfulness.  Willful infringement is determined from the totality of the circumstances.  *Knorr-*

*Bremse Systeme Fuer Nutzfahrzeuge Gmbh. v. Dana Corp.*, 383 F.3d 1337, 1343 (Fed. Cir.

2004).  Willfulness must be established by clear and convincing evidence.  *Comark*, 156 F.3d at

1190.  In finding Dillon's infringement was willful, the jury was required to find that Dillon

acted in disregard of the '010 and '236 patents and lacked a reasonable basis for believing it had

a right to act as it did.  *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1530 (Fed. Cir.

1993).  A jury's finding of willfulness is not supported by substantial evidence if "[n]o

reasonable juror could find the asserted proof of willfulness rose to the quantum of clear and

convincing evidence."  *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 829 (Fed. Cir. 1992) *abrogated*

*on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975 (Fed. Cir. 1995).

Most evidence regarding willfulness related to Dillon's development of the StoneLoc

block.  As explained above, however, Dillon's manufacture or sale of the StoneLoc block does

not infringe either the '010 or '236 patents literally or under the doctrine of equivalents.  Thus,

the only portion of the jury's verdict regarding willful patent infringement that remains relates to

Dillon's manufacture or sale of Allan Block blocks after July 27, 2004.  The circumstances

surrounding the manufacture and sale of these blocks involve a dispute between the parties over

whether Allan Block gave proper notice allowing it to terminate the Agreement on July 27, 2004, or whether the Agreement terminated in September 2004.[5]   Evidence at trial indicates that Dillon could have had a reasonable (albeit incorrect) basis for believing it had a right to manufacture and sell Allan Block blocks until September 2004.  The Court concludes that no reasonable juror could have found clear and convincing evidence of willfulness as to Dillon's post-July 27 manufacture and sale of Allan Block blocks.  Dillon's motion for judgment as a matter of law on the issue of willfulness is granted.  The Court also conditionally grants Dillon's motion for a new trial because the jury's verdict on willfulness is against the great weight of evidence.

**C.      Post-trial motions on contract claims**

*1.      Dillon's motion regarding Producer's Improvement*

Dillon renews its motion for judgment as a matter of law and, in the alternative, moves for a new trial on Allan Block's claim that Dillon violated the Producer's Improvement provision of the Agreement.  Paragraph 8.9 of the Agreement provides in part:

> Producer shall promptly notify Licensor of any Improvement, betterment or modification of the Block and/or the Technology of which Producer is aware ("Producer's Improvement").  Producer may utilize Producer's Improvement only with the prior written consent of Licensor and at Producer's expense.  Licensor shall own the rights to and Licensor may utilize Producer's Improvement without any payment to Producer.

Dillon argues that this provision only applies to improvements made to proprietary material because "the Block and/or the Technology" is limited to the Block's unique locking mechanism as protected by the '010 patent.  Dillon also argues that Allan Block failed to meet its burden to prove that the StoneLoc block embodies any proprietary material.

---

[5]      These circumstances are discussed in more detail in the Court's discussion of waiver below.

The Court left the interpretation of Producer's Improvement and Technology to the jury. The Court concludes that there was ample evidence presented at trial to allow a reasonable juror to conclude that Technology is not limited to proprietary material and that the Producer's Improvement provision encompasses more than proprietary material of Allan Block.  For example, Paragraph 3.1 of the Agreement defines the Block as "a proprietary design cement block" and Technology as '[t]he Molds, the application for the patent, the foregoing technology, and all other unpatented, related know-how, trade secrets, processes, designs, technical data and inventions, whether patentable or not, owned or used by Licensor in connection with the Block." In addition, Robert Gravier, who negotiated the contract on Allan Block's behalf, testified that the definition of Technology "covers [Allan Block's] patented and unpatented and related know-how as part of [the] package of materials that [Allan Block] provide[s] on a steady and ongoing basis under this contract." Similarly, Timothy Bott, Allan Block's Vice President and Marketing Director and former Allan Block producer, testified about the meaning of Technology.  In response to the question of whether Gravier expressed "any of his understandings in paragraph 3.1," Bott answered:

> Yes, in the conversations that we had, [Gravier] and I discussed the fact that the technology that he was providing me was not just about a patented product.  It was all the details that would help me with the marketing and engineering and, basically, the product that he had developed thus far to allow me to get into this new market in a rather expedited fashion.

In addition, the jury was presented with sufficient evidence demonstrating that Dillon used and modified Allan Block's Technology and block to create the StoneLoc block.  For example, there was evidence that Dillon used and modified Allan Block drawings, Allan Block molds, and an Allan Block block.  In addition, Allan Block's expert testified that the StoneLoc block was a "derivation" of the Allan Block block.  Thus, there was sufficient evidence for the

jury to decide that the StoneLoc block is a Producer's Improvement.  Accordingly, the Court

denies Dillon's motion for judgment as a matter of law.  The Court also concludes that the jury's

determination on this issue is not against the great weight of evidence.  Accordingly, Dillon's

motion for a new trial is denied.[6]

> 2.   *Dillon's motion regarding Technology*

Dillon moves for a new trial, arguing that the jury's finding that Dillon used Allan

Block's Technology to develop the StoneLoc block was against the great weight of the evidence.

In particular, Dillon argues that the term Technology as used in the Agreement must be limited

to proprietary material and that Dillon did not use any proprietary material in the development of

the StoneLoc block.  Dillon also argues that if Technology is more inclusive, then any alleged

breach for using such Technology is not central to the achievement of the Agreement.  Finally,

Dillon argues that the amount of damages awarded is against the great weight of evidence.[7]

As discussed above with respect to the jury's finding on Producer's Improvement, there

was ample evidence presented at trial to allow a reasonable juror to conclude that the definition

of Technology is not limited to proprietary material.  Such evidence includes, for example, the

language of the Agreement itself and the testimony of Robert Gravier and Timothy Bott.

Further, for the reasons discussed above, the jury's determination that Dillon used Allan Block's

Technology to develop the StoneLoc block is not against the great weight of evidence.  In

addition, there was sufficient evidence to support a jury's finding that Dillon's use of Allan

Block's Technology was a material breach.  Dillon's motion for a new trial is denied.

---

[6]     Dillon also argues that it is entitled to a new trial on damages.  Dillon has moved separately for a new trial on damages.  The Court considers all of Dillon's arguments on damages together below.

[7]     Again, the Court considers all of Dillon's arguments on damages below.

3.      *Dillon's motion regarding waiver*

Dillon moves for judgment as a matter of law that Allan Block waived its right to

terminate the Agreement as of July 27, 2004, and therefore, there can be no infringement for

Dillon's manufacture and sale of the Allan Block products from July 27, 2004, through

September 10, 2004.  In the alternative, Dillon moves for a new trial.  Specifically, Dillon argues

that a July 13, 2004, letter from Allan Block was insufficient to constitute proper notice under

the Agreement and that Allan Block's acceptance of late payments over the years constitutes a

waiver of its right to terminate the Agreement for late payment.  The Court instructed the jury as

follows:

> One issue in this case is whether E. Dillon continued to manufacture Allan
> Block product after the Production Agreement was terminated.  In determining
> whether the Production Agreement was terminated on the specific date, be aware
> of the following law that's applicable to contracts.  Parties to a contract may agree
> to waive certain provisions of a contract.  A waiver is the intentional
> relinquishment of a known right.  The party arguing waiver has the burden of
> proof on that issue, on the issue of waiver.

Under the terms of the Agreement, Dillon was required to make royalty payments on the

fifteenth of each month for sales made during the preceding month.  The parties agreed that a late

royalty payment would not be an event of default unless Dillon failed to cure the payment

"within 10 days after receipt of written notice."  Evidence at trial demonstrates that Allan Block

accepted late royalty payments from Dillon on numerous occasions.

On May 13, 2004, Allan Block served Dillon with notice of its intent to terminate the

Agreement.  The notice triggered a 120-day expiration period, ending on or about September 10,

2004.  On July 13, 2004, Allan Block sent Dillon a letter that read in part:  "In accordance with

our production agreement with E. Dillon, payment of royalties for May was due on June 15.

Please make payment immediately.  As a reminder the June royalty payment is due on July

15th." On July 20, 2004, Allan Block sent another letter to Dillon, stating in part: "In accordance with our production agreement with E. Dillon, payment for royalties for May and June were due on June 15th and July 15th. Please forward the June report and make payment immediately." On July 27, 2004, Allan Block sent Dillon a letter declaring an Event of Default. On July 29, 2004, Dillon sent a letter to Allan Block enclosing payment for May and June royalties. Also in that letter, Dillon indicated its belief that it had until August 2, 2004, to cure any alleged default.

Based on this evidence, the jury could reasonably have found that Allan Block's July 13, 2004, letter constituted proper notice under the Agreement. In addition, the jury could reasonably have found that Allan Block did not waive compliance with the notice provision of the Agreement. Accordingly, Dillon's motion for judgment as a matter of law is denied. The Court also concludes that the jury's determination that the manufacture or sale of Allan Block blocks after July 27, 2004, infringed Allan Block's patents is not against the great weight of evidence. Accordingly, Dillon's motion for a new trial is denied.

**D.     Dillon's motion for a new trial on damages**

The Court turns to Dillon's motion for a new trial on damages or, in the alternative, remittitur. Dillon claims that if any of its post-trial motions on Technology, Producer's Improvement, or infringement of the '010 or '236 patents is granted, a new trial on damages is warranted. Dillon also argues that Allan Block failed to produce evidence directly linking any of Dillon's contractual breaches or infringement allegations to damages experienced by Allan Block.

The jury, following the Special Verdict Form, awarded damages for breach of contract and patent infringement. Both amounts were $303,289. At trial, Allan Block's damages expert

calculated a reasonable royalty rate for Dillon's manufacture and/or sale of StoneLoc and Allan Block products and determined that $303,289 was a reasonable calculation of Allan Block's damages.  In doing so, he reviewed Dillon's production, sales, inventory, and royalty information.  Allan Block's expert showed the jury calculations for StoneLoc sales and royalties and StoneLoc inventory and works-in progress.  He also presented the jury with evidence concerning Dillon's production of Allan Block blocks after July 27, 2004, explaining that he considered and reviewed updated sales, royalty, and inventory information on these blocks.

The Court concludes that there was sufficient evidence to allow a jury to find that Allan Block was damaged in the amount of $303,289.  Allan Bock is entitled to reasonably royalties for Dillon's manufacture or sale of (1) Allan Block blocks after July 27, 2004, as damages for patent infringement; and (2) StoneLoc blocks, as damages stemming from Dillon's breach of the Agreement.[8]  The evidence supports the conclusion that $303,289 represents a reasonable royalty for Dillon's manufacture and/or sale of both StoneLoc blocks and Allan Block blocks.  Thus, the jury's damage award totaling $303,289 is not against the great weight of evidence and Dillon's motion for a new trial is denied.

---

[8]     The jury concluded that the StoneLoc block is a Producer's Improvement.  Under the Agreement, Allan Block "shall own the rights to and [Allan Block] may utilize Producer's Improvement without any payment to [Dillon]."  Based on the language of the Agreement, the jury could reasonably have concluded that Allan Block was entitled to royalties for Dillon's manufacture and sale of StoneLoc blocks.

E.      **Allan Block's motion to amend the judgment to include attorney fees, enhanced damages, and prejudgment interest**

        *1.      Attorney fees and prejudgment interest*

Under Minnesota law, attorney fees are generally allowable if authorized by contract or statute, or if a party acts in bad faith. *Material Movers, Inc. v. Hill*, 316 N.W.2d 13, 18 (Minn. 1982). Allan Block first argues that it is entitled to attorney fees under 35 U.S.C. § 285. Section 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The Court has granted Dillon's motion for judgment as a matter of law on the issue of willfulness. In light of that ruling and considering the circumstances of this case, the Court declines to declare this an exceptional case and does not award attorney fees under section 285.

Allan Block also argues that it is entitled to attorney fees and prejudgment interest under the terms of the Agreement. Paragraph 10.2 of the Agreement provides:

> In case of any default by Producer as specified herein, Producer shall pay all of Licensor's costs of collecting any sums due to Licensor, including reasonable attorney's fees actually incurred, and the lesser of 15% or the maximum interest rate or rates charged permitted by law.

The United States District Court for the Western District of Wisconsin considered nearly identical contract language under Minnesota law in *Allan Block Corp. v. County Materials Corp.*, 2007 U.S. Dist. LEXIS 30690 (W.D. Wis. April 23, 2007) (Wisconsin Action).[9] In the Wisconsin Action, Allan Block moved for an award of attorney fees and prejudgment interest

---

[9]      One of the contracts at issue in *Allan Block v. County Materials* states:

> In the case of any default by Producer as specified herein, Producer shall pay all of Licensor's costs of collecting any sums due to Licensor, including reasonable attorney's fees, and the lesser of 15% or the maximum interest rate or rates charged permitted by law.

after prevailing at trial on a suit for breach of covenants not to compete. *Allan Block*, 2007 U.S. Dist. LEXIS 30690, at *1,*26.  The court in the Wisconsin Action explained that under the relevant contract, Allan Block would be entitled to attorney fees if (1) there was a default and (2) the action was brought in connection with collecting any sums due. *Id*. at *29.  The court then concluded that Allan Block did not bring the action for the purpose of "collecting any sums due" and therefore was not entitled to attorney fees or prejudgment interest. *Id*.  The court explained that at the time Allan Block brought the action, it was uncertain whether the jury would award damages and the specific amount of any damages was not known. *Id*. at *30.

Dillon argues that the court's ruling in the Wisconsin Action is binding here under the doctrine of issue preclusion.  Under that doctrine, parties are precluded from contesting matters that they have had a full and fair opportunity to litigate. *Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir. 1996).  Because the issue of preclusion was not thoroughly briefed by both parties, the Court declines to decide whether the ruling in the Wisconsin Action is binding here. Instead, the Court holds that Allan Block is not entitled to attorney fees or prejudgment interest under the plain and ordinary meaning of Paragraph 10.2 of the Agreement.

Under Minnesota law, absent an ambiguity, contract terms are given their plain and ordinary meaning. *See Minneapolis Pub. Hous. Auth. v. Lor*, 591 N.W.2d 700, 704 (Minn. 1999).  Paragraph 10.2 provides for attorney fees and prejudgment interest in actions brought for "collecting any sums due."  The plain meaning of "due" is "immediately enforceable" or "[o]wing or payable; constituting a debt." *Black's Law Dictionary* 538 (8th ed. 2004).  Allan Block argues that this is an action for "collecting any sums due" because it is an action to collect unpaid royalties. *Cf. Allan Block*, U.S. Dist. 2007 LEXIS 30690, at *30 ("plaintiff failed to allege that defendant owed a debt under the Agreement such as an unpaid royalty fee for sales of

Allan Block product"). The Court disagrees. Allan Block brought this action for breach of contract and patent infringement. While Allan Block's Amended Complaint stated a breach of contract claim for unpaid royalties, this claim was not submitted to the jury. The only contract claims submitted to the jury related to Dillon's development of the StoneLoc block. At the time Allan Block filed this action, it was not certain whether Dillon infringed Allan Block's patents or that a jury would determine that Dillon breached the Agreement in developing the StoneLoc block. In addition, the amount of damages was uncertain.[10] The fact the damages in this case were ultimately based on a reasonable royalty does not convert it into an action for "collecting any sums due." The Court concludes that Allan Block is not entitled to attorney fees or prejudgment interest under the Agreement.

### 2. Enhanced damages

Allan Block seeks treble damages under 35 U.S.C. § 284. The award of such damages is within the discretion of the trial court. *Read Corp.*, 970 F.2d at 826. Here, the Court has determined that Dillon's infringement was not willful. In addition, the Court does not find that Dillon engaged in any misconduct during the litigation. The Court declines to award enhanced damages. *See id*. at 830-31 (declining to award enhanced damages absent willful infringement).

## F.   Allan Block's motion to amend the judgment to include orders for a permanent injunction and specific performance

Allan Block moves to amend the judgment to include orders for a permanent injunction and specific performance. In particular, Allan Block seeks a permanent injunction prohibiting infringement of the '010 and '236 patents; specific performance barring use of Allan Block's Technology, including the manufacture of StoneLoc or Allan Block blocks; specific performance

---

[10]      In its Amended Complaint, Allan Block indicated that damages were to be proven at trial.

requiring return of the molds; and specific performance requiring assignment of U.S. Patent No. 7,185,470 ('470 patent).

1.      *Permanent injunction*

Under 35 U.S.C. § 283, a court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent." The Court considers (1) whether the plaintiff suffered an irreparable injury; (2) whether remedies available at law are inadequate; (3) the balance of the hardships; and (4) the public interest. *eBay, Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837, 1839 (2006). The decision whether or not to grant permanent injunctive relief is within the discretion of the court. *Id.* Here, the Court has determined that Dillon's manufacture or sale of the StoneLoc block does not infringe the '010 patent or the '236 patent. Thus, the Court denies Allan Block's motion for a permanent injunction insofar as it seeks to enjoin Dillon's sale of StoneLoc blocks under section 283. The jury determined that Dillon's manufacture or sale of Allan Block blocks after July 27, 2004, infringed Allan Block's patents. That determination stands. After considering the relevant factors, the Court grants Allan Block's motion for a permanent injunction prohibiting infringement of the '010 and '236 patents through the future manufacture or sale of Allan Block blocks. In short, Allan Block will be irreparably harmed if Dillon is not enjoined from manufacturing or selling Allan Block blocks, monetary damages are inadequate to compensate for any continued infringement, and the balance of the harms and public interest favor issuance of an injunction. The Court, however, does not enjoin Dillon from selling its remaining inventory of Allan Block blocks. The record indicates that the jury's damage award included a reasonable royalty for all Allan Block blocks remaining in Dillon's inventory. It would be inequitable to prohibit Dillon from selling the blocks for which it must pay royalties.

2.     *Specific performance*

Allan Block moves for an order requiring Dillon to specifically perform under the terms of the Agreement.  In particular, Allan Block seeks an order requiring Dillon (1) to return Allan Block and StoneLoc molds and core forming bars; (2) to stop using Allan Block Technology, including the manufacture of Allan Block or StoneLoc blocks; and (3) to transfer the title and assign all rights and interest in the '470 Patent to Allan Block.

Specific performance is an equitable remedy within the sound discretion of the district court.  *See Walser v. Toyota Motor Sales, U.S.A., Inc.*, 43 F.3d 396, 403 (8th Cir. 1994); *Lilyerd v. Carlson*, 499 N.W.2d 803, 811 (Minn. 1993).  In deciding whether to award specific performance, the Court balances the equities in the case.  *Metro Motors v. Nissan Motor Corp.*, 339 F.3d 746, 749 (8th Cir. 2003).[11]

The jury determined that Dillon breached the Agreement by using Allan Block Technology to develop the StoneLoc block, failing to return Molds to Allan Block, and developing a Producer's Improvement.[12]  The jury also determined that the StoneLoc block is a Producer's Improvement.  Under the Agreement, Allan Block owns "the rights to and [] may utilize Producer's Improvement without any payments to [Dillon]."  Therefore, Allan Block

---

[11]     Allan Block's request for an order prohibiting the use of Allan Block Technology could be considered a request for injunctive relief, not specific performance. With respect to that request, the Court considers whether Allan Block will suffer irreparable harm if the injunction is not granted.  *See United States v. Green Acres Enters., Inc.*, 86 F.3d 130, 132-33 (8th Cir. 1996); *see also Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987) (standard for preliminary and permanent injunction basically the same; party seeking permanent injunction must show actual success on the merits).

[12]     In the event of termination, Paragraph 10.1 of the Agreement provides that "Producer shall:  (i) immediately cease to use the Technology, including the Molds; (ii) immediately return all Technology, including specifically Molds, to Licensor . . . and (iii) immediately cease manufacture of the Block."

owns the rights to the StoneLoc block.  In addition, evidence at trial established that Dillon applied for and was granted a patent—the '470 patent—that covers the StoneLoc block.

The circumstances of this case make the jury's monetary award inadequate.  It would be inequitable and contrary to the purpose of the Agreement to allow Dillon to continue to manufacture and sell the StoneLoc block (the rights to which Allan Block owns under the Agreement), to retain possession of Allan Block molds or Technology, or to retain ownership of the '470 patent.  The Court therefore concludes that Allan Block is entitled to the following equitable relief.  First, Allan Block is entitled to an order requiring Dillon to stop manufacturing or selling the Allan Block block and the StoneLoc block.[13]  Second, Allan Block is entitled to an order requiring Dillon to return Allan Block molds and Technology.  The Technology to be returned includes any tangible Technology covered by Paragraph 3.1 of the Agreement.  Third, because the jury determined that the StoneLoc block is a Producer's Improvement, equity demands that Dillon be required to turn over to Allan Block the molds and core forming bars for the StoneLoc block.  Finally, because the '470 patent covers the StoneLoc block, Allan Block is entitled to an order requiring Dillon to transfer title and to assign all rights and interests in that patent to Allan Block.

## III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.   Allan Block's motion for judgment as a matter of law on literal infringement of the '010 patent [Docket No. 363] is DENIED.

---

[13]   Again, this injunction does not prohibit Dillon from selling its remaining inventory of Allan Block blocks.  Similarly, Dillon is not enjoined from selling its remaining inventory of StoneLoc blocks.  As with the Allan Block blocks, the record indicates that the jury's damage award included a reasonable royalty for StoneLoc blocks remaining in Dillon's inventory.  It would be inequitable to prohibit Dillon from selling the blocks for which it must pay royalties.

2.    Allan Block's motion for a new trial on literal infringement of the '010 patent [Docket No. 363] is DENIED.

3.    Allan Block's motion for a new trial on literal infringement of the '236 patent [Docket No. 363] is DENIED.

4.    Allan Block's motion to amend the judgment to include attorney fees, enhanced damages, and prejudgment interest [Docket No. 361] is DENIED.

5.    Allan Block's motion to amend judgment to include orders for a permanent injunction and specific performance [Docket No. 362] is GRANTED IN PART:

   (a)    Dillon and those in privity or acting in concert with Dillon are permanently enjoined, in accordance with 35 U.S.C. § 283, from further infringement of the '010 patent and the '236 patent, including but not limited to the manufacture or sale of Allan Block blocks, during the remainder of the term for which such patents have been granted.  This injunction does not prohibit Dillon from selling its remaining inventory of Allan Block blocks.

   (b)    Dillon and those in privity or acting in concert with Dillon shall immediately:  (1) cease manufacturing or selling Allan Block blocks and StoneLoc blocks; (2) return to Allan Block all Allan Block molds and tangible Technology covered by Paragraph 3.1 of the Agreement; (3) turn over to Allan Block all molds and core forming bars for the StoneLoc block; and (4) assign all rights and interests in the '470 patent to Allan Block.  This order does not prohibit Dillon from selling its remaining inventory of Allan Block blocks or StoneLoc blocks.

6.    Dillon's motion for judgment as a matter of law on noninfringement of the '010 patent under the doctrine of equivalents [Docket No. 345] is GRANTED.

7.    Dillon's motion for a new trial on noninfringement of the '010 patent under the doctrine of equivalents [Docket No. 345] is CONDITIONALLY GRANTED.

8.    Dillon's motion for judgment as a matter of law on noninfringement of the '236 patent under the doctrine of equivalents [Docket No. 345] is GRANTED.

9.    Dillon's motion for a new trial on noninfringement of the '236 patent under the doctrine of equivalents [Docket No. 345] is CONDITIONALLY GRANTED.

10.     Dillon's motion for judgment as a matter of law on willfulness [Docket No. 345] is GRANTED.

11.     Dillon's motion for a new trial on the issue of willfulness [Docket No. 345] is CONDITIONALLY GRANTED.

12.     Dillon's motion for judgment as a matter of law regarding Producer's Improvement [Docket No. 345] is DENIED.

13.     Dillon's motion for a new trial on issue of Producer's Improvement [Docket No. 345] is DENIED.

14.     Dillon's motion for a new trial regarding Technology [Docket No. 346] is DENIED.

15.     Dillon's motion for judgment as a matter of law on waiver [Docket No. 345] is DENIED.

16.     Dillon's motion for a new trial on waiver [Docket No. 345] is DENIED.

17.     Dillon's motion for a new trial on damages [Docket No. 346] is DENIED.

Dated:  August 20, 2007

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge